CHARLES L. TOLLER, Indiv. and as Next Friend of Matthew J. Toller, a Minor, Plaintiff-Appellant, v. PLAINFIELD SCHOOL DISTRICT 202 *et al.*, Defendants-Appellees.

Third District   No. 3—91—0239

Opinion filed November 19, 1991.

Thomas P. Naughton, of Law Offices of Naughton & Markese, of Joliet (Paula A. Gomora, of counsel), for appellant.

E. Kent Ayers, of Spesia & Ayers, of Joliet (Dinah Lennon Archambeault, of counsel), for appellees.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Charles L. Toller, brought this action against the defendants, Plainfield School District 202 and Indian Trails Junior High School, alleging wilful and wanton misconduct in connection with a wrestling match held during sixth-grade gym class in which the plaintiff's son, Matthew L. Toller, was injured. The trial court granted the defendants' motion for summary judgment finding that the defendants' conduct was not wilful and wanton. The plaintiff appeals.

The record reveals that the plaintiff brought a two-count complaint. Count I alleged, *inter alia*, that the defendants were wilfully and wantonly negligent in that they: (1) knew wrestling carried an inherent risk of serious bodily injury; (2) failed to implement written guidelines requiring teachers to match students by weight classifications, even though they knew of such classifications and used them in extracurricular wrestling competition; (3) failed to adequately investigate the causes of two prior wrestling injuries which occurred in gym class; and (4) failed to take reasonable steps to ascertain the various weights of the students before pairing them for wrestling matches. Count II alleged negligence against 12-year-old Michael Corsi in that he body slammed the plaintiff's son. Defendant Corsi was subsequently dismissed from this suit.

Matthew Toller, the plaintiff's son, testified in his deposition that on December 8, 1988, he was in sixth grade and weighed 83 pounds. Part of his school curriculum consisted of gym class on Tuesdays and Thursdays. Arnold Blaylock, the gym instructor, divided the class into three groups of 10 each for wrestling competition. According to Matthew, Blaylock divided the groups based on height. Matthew was placed in the second group along with Corsi. Corsi was about the

same height, but was heavier, weighing about 100 pounds. On December 8, 1988, which was the second day of wrestling class, Matthew wrestled Corsi. At some point during the match, Corsi placed his left foot behind Matthew's right foot and pushed him backwards. Matthew fell on his left arm, and Corsi landed across Matthew's chest and left shoulder. After Matthew screamed in pain, Blaylock called for ice and the assistant principal. Blaylock then helped Matthew up and took his arm from behind his back and put it in front of him. Matthew noted that the maneuver Corsi used to take him down was not a wrestling procedure taught by Blaylock.

Michael Corsi stated in his deposition that on December 8, 1988, he weighed between 100 and 105 pounds. When he was chosen to wrestle Matthew, they were the only pair in the group that had not yet wrestled. Corsi's description of the occurrence was similar to Matthew's description. Additionally, he stated that Blaylock watched the match from the edge of the mat about 10 feet away. Corsi noted that Blaylock had instructed the class not to use any illegal maneuvers. Corsi also noted that he watched wrestling on television and saw Hulk Hogan at the Rosemont Horizon.

Arnold Blaylock stated in his deposition that he was a physical education teacher for the Plainfield School District 202 with 22 years of experience. He taught the sixth-grade class the fundamentals of wrestling, using a weekly lesson plan. On the first day, he demonstrated certain wrestling procedures and instructed the students not to engage in illegal moves, such as the body slam. Blaylock was aware that weight classifications existed for extracurricular junior high school wrestling and that the purposes of the classifications were safety and fair competition. Blaylock divided the class by estimating size, height, weight, body structure, and ability. Although he recognized that Corsi might have been a little stockier and stronger than Matthew, he explained that he placed them in the same group because if he had placed Corsi in a different group, he would have been with boys much larger.

In his deposition, George Capps, the principal at Indian Trails Junior High School, testified that the parent-student handbook addresses accident reports. It mandates that a report be completed whenever a student is injured in the school building or as part of a school activity. Once he reads the accident report, he makes a follow-up if he has any questions. The report of injury concerning Matthew was one source of feedback to determine whether school policy and procedures were followed. He noted that no one raised an issue regarding the disparity in weight between the two boys. He further

noted that the school did not have guidelines or standards requiring sixth-grade students to be matched according to certain weight categories. He stated that instruction in the rules and proper techniques were adequate safeguards to protect against the risk of injury. He acknowledged that the purposes of weight divisions in competitive interschool wrestling are to equalize competition and ensure safety.

Emmet Fleming, the school administrator for Plainfield School District 202, stated in his deposition that if accident reports showed an unusual pattern of injury, it could potentially dictate a change in the school's program, procedure, or equipment. Fleming acknowledged that there are weight categories for competitive wrestling, but that the district concluded that such classifications were unnecessary for gym class. He stated that the children can be adequately protected without them.

The plaintiff's expert, Frank Jambois, Ph.D., testified that he was a consultant for the national YMCA and a member of the American College of Sports Medicine. After reviewing the deposition testimony in the present case, he concluded that the defendants blatantly disregarded the established wrestling weight classifications. He opined that wrestling was an inherently dangerous activity, but he also stated that any physical activity is inherently dangerous.

Based on the foregoing, the trial court granted the defendants' motion for summary judgment. The court found that although the defendants' conduct may have been negligent, it was not wilful and wanton.

On appeal, the plaintiff contends that the trial court erred in granting the defendants' motion for summary judgment. The plaintiff argues that the defendants' conduct was wilful and wanton because established weight guidelines existed yet Blaylock ignored those guidelines and the school district refused to implement them as part of its curriculum. The plaintiff further argues that the defendants failed to adequately investigate two prior injuries occurring in Blaylock's wrestling classes.

■■ It is well settled that absent proof of wilful or wanton misconduct, educators are immune from tort liability for personal injuries sustained by students during school activities. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; *Weiss v. Collinsville Community Unit School District No. 10* (1983), 119 Ill. App. 3d 68, 456 N.E.2d 614.) To impose liability upon educators, a plaintiff must allege and establish that when the educators acted, or failed to act, it was with knowledge that such conduct posed a high probability of serious physical harm to others. (*Weiss v. Collinsville*

*Community Unit School District No. 10* (1983), 119 Ill. App. 3d 68, 456 N.E.2d 614.) Liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference of the consequences when the known safety of other persons was involved. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) However, since the question is also a matter of degree, a hard and thin line definition should not be attempted. Whether wilful or wanton misconduct exists may be a question of law. *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.

None of the cases cited by the parties are particularly close factually to the case at bar. However, we find that *Lynch v. Board of Education of Collinsville Community District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447, supports the trial court's decision.

In *Lynch*, teachers and a school district were charged with wilful and wanton conduct for failing to supervise a high school girls' powderpuff football game. The plaintiff sustained head injuries while playing the game without a helmet. The evidence showed that the teachers had conducted several practice sessions, warned the girls that the sport could be rough, and advised them to wear mouthpieces. In holding that there was not wilful or wanton misconduct as a matter of law, the supreme court stated that the evidence did not demonstrate an utter and conscious disregard for the safety of the girls, but rather, it simply showed insufficient precautions for their protection.

Similarly, in the instant case, we find that the defendants' conduct in failing to implement strict weight classifications was not wilful or wanton negligence. The various depositions established that Blaylock instructed the students on the rules of wrestling, incorporated the objectives of the curriculum in his lesson guide, demonstrated various wrestling maneuvers, and warned the students not to engage in illegal moves such as the body slam. He then matched students according to an estimation of their height, weight, size, body structure, and ability. During the matches, he closely supervised the competition and was refereeing only 10 feet away from the plaintiff when he was injured. Following the accident, Blaylock called for help and applied ice to the injury. Under these circumstances, the defendants' conduct was not wilful and wanton.

■ The plaintiff further contends that defendants' conduct was wilful and wanton because they did not include information in two prior accident reports about the nature and cause of the accidents or their severity.

We disagree. The defendants had an established procedure for making a report of any accident occurring on school grounds. Under the district's policy, a report must be filled out whenever a student is injured. The report is then reviewed by the principal and assistant superintendent to determine if school policy and procedures were being followed. If any unusual pattern of injury was indicated, it would potentially dictate a change in the school's program, procedure, or equipment. Even though the reports were not as detailed as the plaintiff would have liked them to be, it does not mean that the defendants' conduct was wilful and wanton.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and GORMAN, J., concur.